**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**CASE NO. 19-cv-2341-WFJ-JSS**

HONEY MILESTONE,

     Plaintiff,

v.

CITRUS SPECIALTY GROUP, INC.,
HCA PHYSICIAN SERVICES, INC., and
CITRUS MEMORIAL HOSPITAL, INC.,

     Defendants.                                    /

**DECLARATION OF CARRIE BERTINE**

Carrie Bertine ("Declarant") states as follows:

1.     My name is Carrie Bertine. I make this Declaration based on my personal knowledge.

2.     I am employed as the Practice Manager for Citrus Specialty Group, Inc. d/b/a Genesis Women's Center. In this role, I am the senior administrator and oversee the practice as well as its employees.

3.     As part of my duties, I have custody to the personnel files of present and former employees of Citrus Specialty Group, Inc. d/b/a Genesis Women's Center.

4.     Attached to this Declaration as Exhibit 1 is a copy of the Physician Employment Agreement dated July 15, 2017, between Citrus Specialty Group, Inc. and Honey Milestone, M.D., a former employee. A copy of this Agreement is in the personnel file of Dr. Milestone and the attached copy is an accurate and complete duplicate of the document on her personnel file.

5.      The Agreement has been prepared and maintained by Citrus Specialty Group, Inc. in the normal course of business, and is maintained as part of its business records of which I am the custodian.

6.      On August 1, 2018, Dr. Milestone submitted her "without cause" letter of resignation effective in ninety days, per paragraph 6(C) of the Physician Employment Agreement. A copy of her letter is attached as Exhibit 2.

7.      In September 2019, in connection with her premature resignation, Citrus Specialty Group, Inc. commenced an arbitration against Dr. Milestone before the American Health Lawyer's Association, Claim No. 5397.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed this __11ᵗʰ__ day of October, 2019.

_Carrie Bertine_
Carrie Bertine

# EXHIBIT 1

# EXHIBIT 1

**PHYSICIAN EMPLOYMENT AGREEMENT**
**(NON-HOSPITAL SETTING)**
**HCAPS-459 Rev 12/2016 v96**
**Contract CSG-121928, Supplement 0**

THIS **PHYSICIAN EMPLOYMENT AGREEMENT** (the "Agreement") is made and entered into by and between Citrus Specialty Group, Inc. d/b/a Genesis Women's Center ("Employer"), and Honey Milestone, MD ("Physician").

### RECITALS

WHEREAS, Employer is engaged in the business of operating and managing medical practices and other health care services in Citrus County, Florida (the "County");

WHEREAS, Physician is licensed in the state in which the County is located and specializes in Obstetrics and Gynecology ("Specialty"); and

WHEREAS, Employer desires to employ Physician, and Physician desires to be employed by Employer, to render professional physician services, in accordance with the terms and conditions specified herein.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual promises and conditions set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Employer and Physician, intending to become legally bound, agree as follows:

1. **ENGAGEMENT**

   A. Employer engages Physician, and Physician accepts such engagement, as a physician in the Specialty primarily at the medical practice office located at 800 Medical Court East, Inverness, Florida, 34452 (the "Practice"), and such other practice sites as may be reasonably designated by Employer from time to time, in accordance with the terms and conditions of this Agreement.

2. **TERM**

   A. <u>Term</u>. The term of this Agreement shall commence on the Effective Date, which shall be on or about September 1, 2017, but in no event later than three months after that date, and continue until August 31, 2020 ("Agreement Term"), subject to earlier termination of this Agreement pursuant to the *Termination* Section, hereof. The first date that Physician reports to work and is eligible to work pursuant to this Agreement shall be referred to herein as the "Effective Date".

3. **DUTIES AND SERVICES**

   A. <u>Work Schedule</u>. During the Agreement Term, Physician agrees to devote his/her full professional working time and attention, at a minimum of forty (40) hours per work week (excluding time spent on-call), to the practice of medicine for the benefit of Employer under the terms of this Agreement. Employer shall establish Physician's work schedule and on-call schedule, which schedule shall be inclusive of hours providing patient care at the facilities of Employer, any and all Medical Staff obligations, and administrative duties.

   B. <u>Non-Physician Personnel</u>. Employer will provide Physician with a reasonable level of non-physician personnel support, in Employer's discretion, including, but not limited to, nurses, technicians, secretarial staff, and other medical and non-medical personnel, to assist Physician in the performance of his/her duties. Physician shall report to, consult with, and use the input of Employer regarding the hiring and firing of medical staff who work within the Practice and the overall operations of the Practice. All final decisions regarding hiring and firing of Practice personnel shall rest with Employer.

   C. <u>Availability and Duties</u>. Physician shall be responsible for such duties as assigned to him or her from time to time by Employer commensurate with his/her Specialty. Physician shall make him/herself available to provide professional medical services to, and treat patients of Employer, whether such patients are in Employer's office, a hospital, or another treatment location covered by Employer. Physician hereby agrees to devote his/her full working time and attention, together with Physician's best endeavors and skill, for the interest, benefit and best advantage of Employer and shall provide services on behalf of Employer in a manner that shall maintain the productivity of the Practice. Physician shall provide all professional medical services in accordance with the policies and procedures established by Employer, and the appropriate standards of care of the community. Physician shall have the authority to refuse to treat a specific patient or to dismiss any particular patient if the patient has been abusive, disruptive or threatening or has refused to comply with Physician's orders, or for other reasons of a similar nature. In the case of any such dismissal, Physician agrees that appropriate notice by certified letter shall be sent to such patient and

emergency care shall be provided by Physician to such patient for an appropriate period after such dismissal. Notwithstanding the foregoing, Physician agrees that he/she will not refuse to treat a patient and will not discriminate with respect to quality of care of a patient or otherwise on the basis of such patient's race, color, national origin, ancestry, religion, sex, marital status, sexual orientation, age, disability or medical condition, or as otherwise set forth in applicable federal and state laws. Except as otherwise stated herein, Physician specifically understands that Employer shall have the final authority over the acceptance or refusal of any person for whom professional services may be rendered and the amount of fees to be charged to such patients. Physician shall not refuse to see any patient assigned by Employer because of the source of payment for services rendered by Physician or because the patient is or is not employed by any particular employer or is or is not a member of any particular insurance plan or HMO. During the Agreement Term, Physician shall be required to be "on-call" or "on-duty" as reasonable and appropriate. Physician shall not substitute a physician to provide service in his or her place without Employer's prior approval except that such approval shall not be required if the physician substituting "on-call" or "on-duty" coverage with Physician is an employee of Employer and has full active privileges at the facility where Physician has coverage requirements and Employer is provided advance notice of such substitution. Physician shall accept and receive consultations and requests for professional services from physicians employed by Employer, as well as from other physicians with whom Employer has contractual relationships for the provision of medical services. In the event a patient of the Practice requires (i) hospitalization, (ii) outpatient services, (iii) diagnostic, lab, physical therapy, or other ancillary services, or (iv) any other healthcare services, Physician shall take all necessary and appropriate actions.

D. **Patient Care**. Nothing in this Agreement shall be interpreted to dictate Physician's practice of medicine, delivery of direct patient care or independent judgment in the practice of medicine. Physician shall have complete control over the diagnosis and treatment of patients, and neither Employer nor any employee of Employer shall exercise any direct supervision or control over the individual treatment of the patient. Physician agrees that Physician's treatment and diagnosis of patients will be consistent with all rules and regulations promulgated by Employer dealing with the general treatment of patients. In rendering medical services to patients, Physician shall satisfy the standards and requirements of all state and federal statutes and all standards, rulings, or regulations of the Board of Medicine/Medical Examiners (or other equivalent board or agency), the Department of Health of the state in which the Practice is located, or any other applicable governmental agency or individual having authority to administer, regulate, accredit, or otherwise set standards for the Practice.

E. **Performance Standards**. In performing services under this Agreement, Physician shall comply with the following Performance Standards:

i. promote cooperation and teamwork among other physicians and other employees and personnel of Employer;

ii. develop standardization of Specialty practices and procedures;

iii. attend all required management meetings;

iv. assist Employer as requested in the efficient and effective day-to-day management of the Practice;

v. respond to patient and referring physician needs and concerns regarding patient diagnosis and treatment as expeditiously as reasonably possible;

vi. fully support Employer's overall quality improvement and quality assurance initiatives;

vii. recommend professional, technical, and support staff needs to Employer;

viii. recommend policies and procedures regarding scheduling of patients to the end that the safety and health of patients takes precedence over other concerns;

ix. direct other employees of the Practice in the provision of medical services, especially with regard to patient safety;

x. maintain and timely update patient medical records;

xi. adhere to all reasonable Policies and Procedures adopted by Employer; and

xii. adhere to such other performance standards as established by Employer from time to time.

xiii. utilize technology-based programs and equipment as provided by Employer; Physician will not load any technology-based programs onto equipment owned by Employer or utilize any electronic devices (e.g., PDAs) not purchased or approved by Employer.

xiv. Physician shall promptly report to Employer any actual, potential or perceived conflict of interest in accordance with, and shall otherwise comply with, Employer's Conflict of Interest Policy (HCAPS EC.021).

F.   **Location(s) for Services**. Physician shall perform his/her duties at the Practice, those hospital facilities at which Physician maintains medical staff privileges and such other practice locations of Employer as may be reasonably designated by Employer from time to time. Employer shall have reasonable discretion to consolidate and relocate practices operated by Employer, including the Practice.

G.   **Outside Medical Services**. During the Agreement Term, Physician shall not provide Outside Medical Services without Employer's prior written consent. "Outside Medical Services" means services, provided other than on behalf of Employer, involving the use of Physician's medical education, title, license, training or experience. Such services include, without limitation, professional medical and surgical services, call coverage services, medical director services, research services and other services, such as teaching, writing, speaking, consulting, research or expert witness services, regardless of whether Physician performs such services on behalf of himself or herself or on behalf of a third party and regardless of whether Physician performs such services for gain, profit or other pecuniary advantage. Such services do not include however services provided by Physician to a third party on behalf of Employer. For illustration purposes only, if Physician provides on behalf of Employer medical director services to a hospital pursuant to an agreement between the hospital and Employer, those medical director services would not be considered Outside Medical Services. If Employer provides written consent to the provision by Physician of an Outside Medical Service, such Outside Medical Service is referred to herein as a "Permitted Outside Medical Service." Physician acknowledges and agrees that no such consent will be applicable except in the specific instance for which it is given and that the granting of such consent by Employer in a specific instance will not obligate Employer to grant its consent in any subsequent similar instance. With respect to any Permitted Outside Medical Services, if any, Physician represents, warrants and covenants to Employer and agrees as follows: (i) Physician shall not perform any Permitted Outside Medical Service during such times as Physician is required to provide services hereunder and shall not allow any Permitted Outside Medical Services to interfere with the performance of Physician's duties and obligations hereunder; (ii) without Employer's prior express written consent, Physician shall not perform a Permitted Outside Medical Service if doing so would violate the terms of Section 9 (Covenant Not to Compete) below; (iii) if any Permitted Outside Medical Service is of the kind for which general liability, workers compensation and/or professional liability insurance is commonly maintained, Physician shall, at his or her own cost and expense, obtain or cause to be obtained, such insurance from a reputable carrier and in such amounts as are commonly maintained; (iv) except as otherwise agreed in writing by Employer, Physician shall not use any of Employer's resources (including without limitation, staff, space, materials, equipment, software, transcription services, etc.) in connection with the performance of any Permitted Outside Medical Services; and (v) when performing, offering to perform or advertising any Permitted Outside Medical Services, Physician shall not represent that he or she is engaged or employed by Employer or associated with Employer or any of its affiliates (or any facility operated by Employer or any of its affiliates) in any way (other than, if applicable, as an independent member of the medical staff of such a facility); and (vi) Physician shall not allow the compensation he or she receives for any Permitted Outside Medical Service to vary with, or take into account, the volume or value of any of Physician's referrals to, or other business generated for, Employer or any of its affiliates. In the event Physician performs any Outside Medical Services other than as permitted by this Section 3.G., Physician shall promptly notify Employer.

H.   **Workplace Rules**. Physician shall observe and comply with the rules, regulations, policies and procedures established by Employer with respect to the performance of Physician's duties. In the event of any inconsistency between such rules, regulations, policies and procedures and this Agreement, the provisions of this Agreement shall prevail.

I.   **Managed Care**. Physician shall complete/submit all necessary credentialing documentation which will enable Physician to participate in all managed care arrangements made available by or through Employer at least 90 days prior to the Effective Date of this Agreement (or such other period as Employer may request) and within 15 days of all subsequent requests. Employer shall have the sole and exclusive right and authority to enter into contractual relationships with HMOs, IPAs, PPOs, PHOs, IDSs, employer groups, provider networks and other managed care organizations and third party payors. Physician shall not otherwise contract with any managed care organization or third party payor. In connection with such managed care arrangements, Employer shall negotiate such managed care arrangements with the proviso that Physician shall not be individually responsible to the managed care company for any withhold and that no hold harmless provision shall be applicable to, or enforceable upon, Physician. Employer shall use reasonable efforts to ensure that any capitation rates, discounted fees or other risk based arrangements are consistent and competitive with the rates accepted by other physicians practicing in Physician's specialty in the County.

J.   **Other Services**. During the Agreement Term, Physician and Employer may mutually agree to Physician's rendering additional services. Such duties may include service on hospital staff committees, peer review organizations, or other committees of Employer, and serving on national and regional committees of Employer's Affiliates (which term as used in this Agreement shall include any person, corporation, partnership, general partner or other entity that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with Employer); provided that such duties shall not interfere with the professional services provided by Physician on behalf of Employer pursuant to this Agreement.

K. **Additional Physicians**. Employer and Physician agree as an essential term of this Agreement that it is the intent of the parties to develop a comprehensive medical practice. It is further understood that Employer intends to negotiate and enter into employment relationships with additional qualified physicians. Physician agrees to use his/her best efforts to forge and establish an ongoing relationship and team approach with such additional physicians for the furnishing of physician and related services to patients.

L. **Acknowledgement of Information Disclosure**. Physician agrees (a) that any and all information and documentation regarding his or her clinical competence or professional conduct that may be obtained or produced as part of the credentialing, quality assessment, or review of professional conduct by Employer or an affiliated facility in which Employer's physicians provide professional services ("Confidential Information") may be shared between Employer and such affiliated facility and/or with the administrative offices of Employer and its affiliates. Such Confidential Information shall not include discussions by a peer review body, though it may include any decisions made by such a body that have been or will be communicated to the physician; and (b) to extend absolute immunity to, release from any and all liability, and not sue the person or entity disclosing Confidential Information (the "Disclosing Entity"), for disclosing information to the appropriate persons, and/or for any action that may be taken by the person or entity receiving the Confidential Information (the "Receiving Entity") from the Disclosing Entity. In addition Physician agrees that if suit is filed in violation of this provision, Physician shall be responsible for Employer's attorneys fees and costs to defend such suit For purposes of this paragraph, the Disclosing Entity and the Receiving Entity includes Employer, the affiliated facility(s), and any other affiliated entity, as well as all of the employees, agents, and representatives of these entities.

4. **COMPENSATION**

A. **Compensation**. During the Agreement Term, Employer shall pay Physician compensation as set forth on the attached Exhibit(s) ("Physician Compensation").

B. **Leave**. Physician shall be entitled to leave as set forth on the attached Exhibit(s) ("Physician Compensation").

C. **Travel Reimbursement**. Employer, in its sole discretion, may reimburse Physician pursuant to Employer's policies for reasonable travel expenses incurred by Physician in providing professional services, on-call coverage, or any other services as Employer may approve. Any such reimbursement must be pre-approved by Employer and shall not be paid until Physician has submitted travel records or receipts to Employer for the period for which reimbursement is requested in a form acceptable to Employer.

D. **Benefits**. Employer shall provide Physician with medical benefits for Physician and Physician's beneficiaries that are comparable to the coverage available, from time to time, to the other similarly situated employees of Employer. Employer will provide health, life, disability, and dental benefits for Physician on similar terms as the other employees of Employer. Employer's life insurance company may require Physician to satisfactorily pass a physical examination in order to issue a life insurance policy to Physician. In addition, Employer may elect to obtain key-man life insurance coverage on Physician, and Physician hereby agrees to submit to any required physical therefor. Physician shall be entitled to participate in Employer's retirement and other benefit plans as offered from time to time at a level commensurate with the retirement benefits offered to other employees of Employer. Employer shall withhold the employee portion of the costs of all such benefits from Physician Compensation in accordance with its general payroll practices. Employer shall provide Physician other benefits as set forth on the attached Exhibit(s) ("Physician Compensation").

E. **Income and Employment Taxes**. Physician shall be an employee of Employer for all purposes. Employer shall withhold amounts from Physician Compensation in accordance with the requirements of applicable law for federal income tax, FICA, FUTA, and other employment or payroll tax purposes. It shall be Physician's responsibility to report and pay all federal taxes arising from Physician's receipt of compensation hereunder.

5. **INSURANCE**

A. **Medical Liability Insurance**. During the Agreement Term, Employer will pay the cost of your occurrence form professional liability insurance with minimum coverage of Two Hundred Fifty Thousand Dollars ($250,000.00) per occurrence with a yearly maximum of Seven Hundred Fifty Thousand Dollars ($750,000.00) in the aggregate. The limits on that insurance shall be high enough to satisfy the Medical Staff obligations of the facilities where Employer has required you to obtain privileges, if any. Such professional liability insurance will be provided through Employer's Affiliate, Health Care Indemnity, Inc. ("HCI"). You agree to cooperate with HCI in providing any information it needs to acquire and maintain ongoing professional liability coverage. You agree to cooperate with HCI in providing any information it needs to acquire and maintain ongoing professional liability coverage. Also, you agree to cooperate in HCI's defense of any claims made, whether arising prior to, during or after the Agreement Term. If Physician Compensation is specified on Exhibit A and/or Exhibit B, the cost of such insurance shall be treated as an Employer Operating Expense (as defined on Exhibit A).

In exchange for Employer providing professional medical liability insurance, you agree to participate in HCI's risk management and loss prevention programs, which may include successfully completing risk management continuing medical education courses or classes approved by Employer during the Agreement Term.

6.  **TERMINATION**

A.  **Termination by Employer "For Cause."** The Agreement Term (including any renewal term) may be terminated prior to its expiration, at the election of Employer, under any of the following circumstances:

    i.   Upon written notice to Physician, if Physician is in a material breach, default or violation of any provision of this Agreement and fails to cure such material breach, default or violation to the reasonable satisfaction of Employer within thirty (30) days after notice in writing by Employer to do so or within said thirty (30) days to commence such cure and thereafter diligently to prosecute such cure to completion;

    ii.  Upon written notice to Physician, if Physician fails to meet utilization performance, efficiency, or quality standards established by Employer or fails to conform and comply with Employer's professional requirements concerning maintenance of medical records, and fails to cure such failure to the reasonable satisfaction of Employer within ten (10) days after notice in writing by Employer to do so or within such ten (10) days to commence such cure and, thereafter, diligently to prosecute such cure to completion. The opportunity to cure in this Section shall be available only once during the Agreement Term; or

    iii. Immediately upon written notice by Employer to Physician (or Physician's estate) for any of the following reasons:

         a.  Physician's death or permanent disability. The term "disability" shall be defined as a physical or mental impairment that causes the Physician to be unable to perform the essential functions of his or her job as set forth in this Agreement, with or without reasonable accommodation, after consideration of any job protection benefits afforded by applicable state or federal law;

         b.  Physician's license to practice medicine is suspended, subject to probation, revoked, or canceled or a restriction or limitation by any governmental authority having jurisdiction over Physician is placed or imposed upon him/her so that he/she cannot perform the professional services for which he/she was engaged hereunder;

         c.  Physician is terminated or suspended from Medicare, Medicaid or other state or federal government healthcare entitlement program, or any successor program;

         d.  Physician's failure to maintain unrestricted staff membership or privileges on the medical staff of any facility operated by Employer or its Affiliates;

         e.  Physician's medical staff membership or clinical privileges at any acute care hospital or of any facility affiliated with Employer are suspended, curtailed, revoked, or terminated as a result of an adverse action taken by such hospital;

         f.  Physician is convicted of a felony or a crime of moral turpitude;

         g.  Physician conducts him/herself in a manner that Employer determines in good faith to be unethical, unprofessional, unlawful, or fraudulent, is detrimental to patient care, or impairs the reputation or operations of Employer;

         h.  Upon repeated failure by Physician to meet utilization, performance, efficiency, or quality standards established by Employer after a one-time opportunity to cure as described in Paragraph 6.A.ii;

         i.  Upon repeated failure by Physician to conform and comply with Employer's professional requirements concerning maintenance of medical records after a one-time opportunity to cure as described in Paragraph 6.A.ii;

         j.  Upon cancellation of Physician's coverage, or Physician's uninsurability, under the terms and conditions of the professional liability insurance provided;

         k.  Upon the determination by the Employer that Physician has reported to work with a measurable quantity in blood or urine of non-prescribed narcotics, hallucinogenic drugs, marijuana or other non-prescribed controlled substances or that the Physician is working while impaired by alcohol or prescribed narcotics while on the Employer's property or during working hours.

         l.  Physician breaches any material rules, policies and/or procedures of Employer;

m.  Upon the imposition of any restriction or limitation on Physician by any governmental or professional authority having jurisdiction over Physician to such an extent that Physician cannot engage in the practice of medicine as required hereunder;

n.  Upon the determination of Employer in good faith that Physician is not providing adequate patient care or that the health, safety, or welfare of patients is jeopardized by continuing the employment of Physician;

o.  Physician's ability to prescribe controlled substances is suspended, subject to probation, revoked, or restricted in any way; or

p.  Any of the representations of Physician is false or incorrect when made or thereafter becomes false or incorrect, or any warranty of Physician is breached.

B.  **Termination by Physician "For Cause."** The Agreement Term (including any renewal term) may be terminated prior to its expiration, at the election of Physician, under any of the following circumstances:

i.  Upon written notice to Employer, if Employer is in material breach, default or violation of any provision of this Agreement and fails to cure such material breach, default or violation within thirty (30) days after notice in writing by Physician to do so or within said thirty (30) days to commence such cure and thereafter diligently to prosecute such cure to completion; or

ii.  Immediately upon written notice by Physician to Employer for any of the following reasons:

a.  bankruptcy or receivership of Employer; or

b.  revocation or suspension of Employer from the Medicare or Medicaid Programs or any successor program.

C.  **Termination by Employer or Physician "Without Cause."** Employer or Physician may terminate this Agreement hereunder, without cause, at any time upon ninety (90) days prior written notice to the other party provided, however, that, at Employer's sole and exclusive option, Employer may terminate this Agreement and elect to "pay-out" all or a portion of the notice period (subject to applicable payroll withholdings) and offset therefrom any amounts owed by Physician to Employer. The date of termination will be the last day Physician provides services under this Agreement. Such pay-out will be equivalent to the average Physician Compensation (as defined in Exhibit A) earned by Physician in the previous three (3) month period. If the Physician has been working for less than three (3) months, then such pay-out will be determined by the average monthly amount of Physician Compensation earned by Physician.

D.  **Obligations After Termination.** Upon termination of this Agreement for any reason, Physician Compensation shall immediately cease and Physician (or Physician's estate) shall be entitled to receive only those amounts earned or accrued on services provided by Physician up to the date of termination. Physician's rights to any on-going or continuing benefits shall be determined in accordance with the terms of the applicable benefit plan of Employer. Termination of this Agreement shall not release or discharge Employer from any obligation, debt or liability incurred prior to the date of termination of this Agreement. Following any notice of termination of employment hereunder, whether given by Employer or Physician, Physician shall fully cooperate with Employer in all matters relating to the winding down of his or her pending work on behalf of Employer and the orderly transfer of such work to the other professional employees of Employer, if applicable. On or after the tendering of notice of termination hereunder and during any notice period, Employer shall be entitled to such full-time or part-time services of Physician as Employer may reasonably require, and Employer shall specifically have the right to terminate, in whole or in part, the active services of Physician at the time such notice is given and to pay to Physician the compensation due to him or her for the duration of the notice period. The right of the parties to terminate this Agreement shall be without prejudice to any other right or remedy as may be available to a party at law or in equity upon the breach of this Agreement. Notwithstanding the foregoing, neither party shall be liable to the other for any indirect, incidental, or consequential damages or losses, including lost profits, arising out of the breach of this Agreement by the other party, except as provided in the following sentence or as specified on any exhibit or addendum hereto. If Physician provides less than the required notice prior to terminating this Agreement, Physician shall reimburse Employer for its "Excess Cost" during the "Shortage Period" within five (5) business days after Employer's written demand therefor. For purposes of this Agreement, (i) the term "Excess Cost" shall mean the amount expended by Employer in securing coverage for Physician during the Shortage Period in excess of the amount that would have been paid to Physician in accordance with this Agreement during such period, and (ii) the term "Shortage Period" shall mean the difference between the actual number of days notice given by Physician and the number of days of notice required to be given hereunder.

E.  **Other Requirements Upon Termination.** Upon termination of this Agreement for any reason: (i) Physician's participation in any of Employer's fringe benefit plans shall immediately cease (subject to any post termination benefits, if any, expressly stated in the then current plans for such benefits); and (ii) the provisions of Sections 8, 9, and 10 hereof shall remain in full force and effect, except as otherwise specifically provided herein.

## 7.  COVENANTS, REPRESENTATIONS, AND WARRANTIES

A.  Physician covenants, represents, or warrants at all times during the Agreement Term (including any renewal term) that:

  i.  Physician is not in breach of, and will not during the Agreement Term be in breach of, any other contract, obligation, or covenant that could affect his or her ability to perform hereunder and, as a result of entering into this Agreement, will not breach any such contract, obligation, or covenant.

  ii.  Physician is duly licensed and registered and in good standing under the laws of the state in which the Practice is located to engage in the practice of medicine and to prescribe and administer controlled substances, and that such license and registration have not been suspended, revoked or restricted in any manner. As a condition of employment hereunder, Physician, at his or her sole expense unless specifically provided for in this Agreement, shall secure and maintain at all times during the Agreement Term an unrestricted, non-probational license to practice medicine in the state in which the Practice is located. Physician shall report, in writing, any probation, suspension, restriction, limitation, or revocation on any license related to the practice of medicine on the day of such probation, suspension, restriction, limitation, or revocation.

  iii.  Physician shall maintain in good standing unrestricted staff membership and privileges on the medical staff of a hospital facility owned by Employer or its Affiliates.

  iv.  Physician has current controlled substances certifications and registrations issued by the state in which the Practice is located and the United States Drug Enforcement Administration, which certifications and registrations have not been surrendered, suspended, revoked, expired or restricted in any manner. As a condition of employment hereunder, Physician shall, at his or her sole expense unless specifically provided for in this Agreement, secure and maintain at all times during the Agreement Term unrestricted, non-probational certifications and registrations with the state in which the Practice is located and the United States Drug Enforcement Administration to administer and prescribe controlled substances. Physician shall report, in writing, any probation, suspension, restriction, limitation, or revocation on any certification or registration related to the practice of medicine on the day of such probation, suspension, restriction, limitation, or revocation.

  v.  Physician has disclosed and will disclose to Employer the following matters, whether occurring at any time during the past five (5) years prior to the date of this Agreement or at any time during the Agreement Term:

    a.  any actual or threatened malpractice suit, any actual or constructive known claim (whether or not filed in court), settlement, settlement allocation, judgment, verdict or decree against Physician;

    b.  any actual or threatened disciplinary, peer review or professional review investigation, proceeding or action instituted against Physician by any licensure board, hospital, medical school, health care facility or entity, professional society or association, third party payor, peer review or professional review committee or body, or governmental agency;

    c.  any criminal complaint, indictment or criminal proceeding in which Physician is named as a defendant;

    d.  any actual or threatened investigation or proceeding, whether administrative, civil or criminal, relating to an allegation against Physician of filing false health care claims, violating anti-kickback laws, violating fee-splitting laws, or engaging in billing improprieties;

    e.  any organic or mental illness or condition that impairs or is likely to impair Physician's ability to practice medicine;

    f.  any dependency on, or habitual use or abuse of, alcohol or controlled substances, or any participation in any alcohol or controlled substance detoxification, treatment, recovery, rehabilitation, counseling, screening or monitoring program;

    g.  any actual or threatened allegation, or any investigation or proceeding based on any allegation, against Physician for violating professional ethics or standards, or engaging in illegal, immoral or other misconduct (of any nature or degree); and

    h.  any denial or withdrawal of an application in any state for licensure as a physician, for medical staff privileges at any hospital or other health care entity, for board certification or recertification, for state or federal controlled substances registration, or for malpractice insurance.

    i.  any denial of appointment or reappointment of membership on the medical staff of any hospital; any suspension, curtailment, revocation, or termination of any hospital medical staff membership or clinical privileges; or any

voluntary relinquishment of such staff membership or clinical privileges by Physician while a charge of substandard quality of patient care was pending against him/her (regardless of the veracity of the charge).

vi. Physician is board certified or board eligible in the Specialty by the applicable board of medical specialization.

vii. Physician shall at all times render services to patients in a competent, professional and ethical manner, in accordance with prevailing standards of medical practice in the relevant community, perform professional and supervisory services in accordance with recognized standards of the medical profession, and act in a manner consistent with the Principles of Medical Ethics of the American Medical Association and all applicable statutes, regulations, rules, orders and directives of any and all applicable governmental and regulatory bodies having competent jurisdiction.

viii. In connection with the provision of professional services to patients of Employer, Physician shall use the equipment, instruments, pharmaceuticals and supplies furnished by or on behalf of Employer for the purposes for which they are intended and in a manner consistent with sound medical practice.

ix. Physician shall participate in the Medicare and Medicaid Programs, workers compensation, other federal and state reimbursement programs, and the payment plan of any commercial insurer, health maintenance organization, preferred provider organization, accountable health plan, or other health benefit program.

x. Physician shall keep and maintain (or cause to be kept and maintained) appropriate records, consistent with prevailing standards of medical practice in Physician's relevant community, relating to all professional services rendered by him under this Agreement and shall prepare and attend to, in connection with such services, all reports, claims, and correspondence necessary or appropriate in the circumstances, as determined mutually by Employer and Physician, all of which records, reports, claims, and correspondence shall belong to Employer.

xi. Physician covenants not to use, or permit any other personnel under the supervision of Physician to use, any part of the premises of Employer for any purpose other than the performance of services hereunder.

xii. Physician (A) is not currently excluded, debarred, or otherwise ineligible to participate in the Federal health care programs as defined in 42 U.S.C. § 1320a-7b(f) (the "Federal health care programs"); (B) is not convicted of a criminal offense related to the provision of health care items or services but has not yet been excluded, debarred, or otherwise declared ineligible to participate in the Federal health care programs, and (C) is not under investigation or otherwise aware of any circumstances which may result in Physician's being excluded from participation in the Federal health care programs.

The representations, warranties, and covenants contained in this Section shall be ongoing representations, warranties, and covenants during the Agreement Term, and Physician shall immediately notify Employer of any change in the status of the covenant, representation, or warranty set forth in this Section. Any breach of this Section by Physician shall give Employer the right to terminate this Agreement immediately for cause.

8. **DISCLOSURE OF INFORMATION**

A. <u>**Custody of Medical Records**</u>. Physician understands and agrees that during the Agreement Term and thereafter all medical records, case records, case histories, x ray files, or personal or regular files concerning patients of Employer or any of its Affiliates, or patients consulted, interviewed or treated and cared for by Physician, shall belong to and remain the property of Employer. Upon termination of this Agreement, Physician shall not be entitled to keep original records or preserve records of Employer or any of its Affiliates as to any patient unless the patient shall specifically request a direct disposition of his or her records, or copies thereof, and in no event shall Physician be entitled to the records, or copies thereof, of patients not treated by Physician. Employer agrees at all times, both during and after termination of this Agreement, to maintain and preserve such records in a manner consistent and in compliance with all applicable laws and regulations. If Employer provides Physician with original patient records pursuant to the terms hereof, Physician shall retain all of such records and, upon Employer's request, shall make such originals available to Employer. If any medical malpractice or other claim, audit or business need of Physician arises and involves records which are retained by Employer pursuant to the terms hereof, Employer agrees to make such original medical records available to Physician, or Physician's designated counsel or representative for inspection and copying, during regular business hours, in accordance with applicable law.

B. <u>**Disclosure of Information**</u>. Physician recognizes and acknowledges that all records, files, reports, protocols, policies, manuals, databases, processes, procedures, computer systems, materials and other documents pertaining to services rendered by Physician hereunder, or to the operations of Employer, belong to and shall remain the property of Employer and constitute proprietary information and trade secrets of Employer. Physician recognizes and acknowledges that the terms of this Agreement, as well as Employer's proprietary information and trade secrets as they may exist from time to time, are valuable, special, and unique assets of Employer's business. Physician shall not, during or after the Agreement Term, disclose such proprietary information of Employer or trade secrets of Employer to any other firm, person, corporation, association or other

entity for any reason or purpose whatsoever, or use such information for Physician's own benefit, without the prior written consent of Employer, unless otherwise required to disclose such information in accordance with appropriate judicial process.

C. **Injunction.** Physician acknowledges that the confidentiality restrictions contained in this Section are a reasonable and necessary protection of the legitimate trade secrets and business interests of Employer. In the event of any violation of these restrictions, Employer shall be entitled to preliminary and permanent injunctive relief, in addition to any other remedy, and shall be entitled to be reimbursed by Physician for any attorneys' fees and costs, at all pre-trial and appellate levels, incurred as a result thereof. Nothing herein contained shall be construed as prohibiting Employer from pursuing any other legal or equitable remedies available to Employer due to a violation of the restrictions set forth in this Section, including monetary damages and relief.

## 9. COVENANT NOT TO COMPETE

A. **Acknowledgments by Physician.** Physician recognizes and acknowledges the following:

   i. Employer's decision to enter into this Agreement is induced primarily because of the covenants and assurances made by Physician in this Agreement;

   ii. Employer has devoted a considerable amount of time, effort, and expense to establish Employer's medical practice, patient base, and service agreements;

   iii. Employer's goodwill, medical practice, patient base, and service agreements are valuable assets of Employer, and, as a result of Physician's providing services under this Agreement, Physician will have access to Employer's proprietary and confidential information, patient base, and representatives of entities with which Employer contracts;

   iv. During the Agreement Term, Physician will not, directly or indirectly, participate in the unauthorized use, disclosure, or conversion of any confidential information or goodwill of Employer and will not use either for his or her sole benefit or for the benefit of any individual or entity other than Employer, or in any other way that harms Employer or diminishes the confidential information or goodwill to Employer;

   v. Irrevocable harm and damage will be done to Employer if Physician competes with Employer, solicits Employer's patients to become patients of Physician or others, or solicits representatives of entities with which Employer contracts to contract with Physician or with another organization other than Employer;

   vi. Physician's covenant not to compete and covenants not to solicit Employer's patients or contracts in this Section are necessary (i) to ensure the continuation of the business of Employer and the good reputation and goodwill of Employer, and (ii) to facilitate the enforcement of Physician's promises to ensure the confidentiality of information provided to Physician and to promote the goodwill of Employer;

   vii. To the extent Physician's covenant not to compete and covenants not to solicit Employer's patients or contracts in this Section contain limitations as to time, geographical area, or scope of activity to be restrained, those limitations are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interests of Employer; and

   viii. Although Physician is a medical doctor and Physician's livelihood depends on the professional experience and skill developed during Physician's professional practice, Physician's covenant not to compete and covenants not to solicit Employer's patients or contracts in this Section will not deprive Physician of the ability to earn a livelihood as a medical doctor and Employer has no intent to do so.

B. **Restrictive Covenant.** Physician agrees and acknowledges that the covenants contained in this Section are reasonable and necessary for the protection of the interests covered in the fully enforceable and ancillary agreements contained in this Agreement, including, without limitation, the covenants contained in this Section. With the exception of the services and duties that Physician performs for Employer or on Employer's behalf pursuant to the terms of this Agreement, Physician agrees that during the Agreement Term and for a period of one (1) year(s) after the termination of the Agreement Term for any reason whatsoever, Physician shall not: i) Within a seven (7) mile radius of the Practice, as determined at the time of termination, (the "Restricted Territory") (a) engage in any medical practice, engage in any business, or perform any service, directly or indirectly, in competition with the medical services of Employer, (b) have any interest, whether as a proprietor, partner, employee, shareholder, principal, agent, consultant, director, officer, or in any other capacity or manner whatsoever, in any enterprise that shall so engage in medical services, or (c) have any financial interest in any inpatient or outpatient healthcare facility (other than a financial interest of less than five percent (5%) of the issued and outstanding stock of a publicly-traded corporation or a financial interest in a facility owned or operated by an Affiliate of Employer), in each case, that is located in, provides services in, or does any business whatsoever within, the Restricted Territory; or ii) Solicit, recruit or hire any person who is or was an

employee of Employer or any of its Affiliates, whether for Physician's benefit or for others with whom Physician may become associated.

C. **Nonsolicitation of Employees**. Within the Restricted Territory, Physician further agrees that for a period of time equal to one (1) year(s) after termination of the Agreement Term for any reason whatsoever (including expiration), Physician shall not, within the Restricted Territory, solicit the services of any employee, consultant, or provider which renders services to, or for the benefit of, Employer or any of its Affiliates for Physician's use or benefit or for any other person's or company's use or benefit, or induce or help to induce any employee, consultant or provider that renders services to, or for the benefit of, Employer or any of its Affiliates to leave for other employment, without Employer's prior written consent.

D. **Nonsolicitation of Business**. Within the Restricted Territory, Physician further agrees that for a period of time equal to one (1) year(s) year(s) after termination of the Agreement Term for any reason whatsoever (including expiration), Physician shall not, within the Restricted Territory, solicit, serve or accept any business from patients, insurance companies, managed care plans, employers or other customers of the business conducted by Employer or its Affiliates, for services competitive with those of Employer and the Practice or request, induce or advise patients, insurance companies, managed care plans, employers or other customers of the business as conducted by Employer to withdraw, curtail or cancel their business with Employer or assist, induce, help or join any other person or company in doing any of the above activities;

E. **No Running of Covenant During Breach**. With respect to any restrictive covenant which applies after termination of this Agreement, if Physician violates such restrictive covenant and Employer brings legal action for injunctive or other relief, Employer shall not, as a result of the time involved in obtaining the relief, be deprived of the benefit of the full period of such restrictive covenant. Accordingly, after the termination of the Agreement Term for any reason, for any time period that Physician is in violation of the restrictive covenants set forth in this Section, such time period shall not be included in calculating any such restrictive covenant time period described in this Section.

F. **Buy Out and Alternative Application of Covenants**. Provided that Physician is not terminated by Employer for cause pursuant to Paragraphs 6.A.i, 6.A.ii, or 6.A.iii ("Termination") hereof, in lieu of complying with the provisions of the *Restrictive Covenant* Section hereof, Physician may pay Employer the Buy-out Amount. The "Buy-out Amount" shall be the greater of (a) $280,000.00 or (b) the total amount of all remuneration Physician received from Employer for the proceeding twelve (12) month period, including any salary, bonuses, and administrative compensation. If Physician has been working for less than twelve (12) months, then such Buy-out Amount shall be determined by the average monthly amount of remuneration earned by Physician multiplied by twelve (12). In the event Physician chooses to pay the Buy-out Amount to Employer, such amount shall be paid to Employer in full, in cash or other immediately-available funds, within five (5) business days of Physician's provision of written notice to Employer of his/her election to pay the Buy-out Amount. Alternatively, and provided that Physician is not terminated by Employer for cause pursuant to Paragraphs 6.A.i, 6.A.ii, or 6.A.iii hereof, Employer agrees that the restrictive covenants of the *Restrictive Covenant* Section hereof shall be null and void and of no further force or effect in the event any one of the following occurs: (i) Employer discontinues providing the Specialty in the community served by the Practice; (ii) Physician enters the private practice of medicine either as a solo practitioner practice or in a group practice, provided that such practice does not affiliate with any entity that competes, directly or indirectly, with the business of Employer or any of its Affiliates, and provided that Physician remains on the medical staff of an acute care hospital located in the community served by the Practice (for purposes of this subsection (ii), joining the medical staff of an acute care hospital shall not be deemed as "affiliating" with such an entity); or (iii) Physician terminates this Agreement with cause pursuant to Paragraphs 6.B.i or 6.B.ii hereof; *provided, however*, that the forbearance specified in Subsection (ii) shall be available only at Employer's sole and absolute discretion. Notwithstanding the generality of the foregoing, neither the payment by Physician of the Buy-out Amount nor the satisfaction by Physician of one of the post-termination conditions specified in this Section shall relieve Physician from any other obligation arising under this Agreement.

G. **Continuity of Care**. Notwithstanding any other provision of this Agreement to the contrary, if a patient with whom Physician maintains a physician-patient relationship has an acute illness at the time of termination of this Agreement, Physician shall not be prevented from providing continuing care and treatment to that specific patient during the course of such patient's acute illness. In such situations, however, Physician shall terminate his physician-patient relationship with such patient at the conclusion of the patient's acute illness. For purposes of this section, "acute illness" shall mean an affliction, injury, or illness that requires hospitalization or constant medical supervision and is expected to resolve within two weeks of the onset of signs or symptoms.

H. **Ancillary Agreement**. The provisions and covenants of this Section shall survive termination of this Agreement and shall be construed as an agreement ancillary to the other provisions of this Agreement.

I. **Enforcement**. The existence of any claim or cause of action of Physician against Employer, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by Employer of the provisions and covenants of this Section. In the event of breach or threatened breach by Physician of any provision of this Section, Employer shall be entitled

to (i) injunctive relief by temporary restraining order, temporary injunction, and/or permanent injunction, such relief to be without the necessity of posting a bond; however, Physician agrees that in the event a bond is required if an injunction is sought by Employer, the agreed amount of the bond shall be no more than one thousand dollars ($1,000.00), (ii) recovery of all attorneys' fees and costs incurred by Employer in obtaining such relief, and (iii) any other legal and equitable relief to which Employer may be entitled, including, without limitation, any and all monetary damages that Employer may incur as a result of such breach or threatened breach. Employer may pursue any remedy available, including declaratory relief, concurrently or consecutively in any order as to any breach, violation, or threatened breach or violation, and the pursuit of one such remedy at any time will not be deemed an election of remedies or waiver of the right to pursue any other remedy. If any provision contained in this Agreement is determined to be void, illegal, or unenforceable, in whole or in part, then the other provisions contained herein shall remain in full force and effect as if the provision that was determined to be void, illegal, or unenforceable had not been contained herein. If the restrictions in this Section are deemed unenforceable as written, the parties expressly authorize the court or arbitrator to revise, delete, or add to the restrictions contained in this Section to the extent necessary to enforce the intent of the parties and to protect Employer's goodwill, confidential information, and other business interests.

J.  **Early Resolution Conference.** This Agreement is understood to be clear and enforceable as written and is executed by both parties on that basis. Should Physician challenge any provision, however, as unclear, unenforceable, or inapplicable to any competitive activity that Physician intends to engage in, Physician first shall notify Employer in writing and meet with an Employer representative and a neutral mediator (if Physician elects to retain one at his or her expense) to discuss resolution of any disputes between the parties. Physician shall provide this notification at least fourteen (14) days before Physician engages in any activity on behalf of him/herself or a competing entity or engages in other activity that could foreseeably fall within a questioned restriction. The failure to comply with this requirement shall waive Physician's right to challenge the reasonable scope, clarity, applicability, or enforceability of this Agreement and its restrictions at a later time. All rights of both parties will be preserved if the early resolution conference requirement is complied with even if no agreement is reached in such conference.

10. **FEES**

A.  **Fees for Services.** All fees, compensation, monies, and other things of value received or realized as a result of the rendering of services hereunder by Physician shall belong to and be paid and delivered to Employer, and Physician hereby assigns to Employer any rights Physician has to payments made by Medicare, Medicaid, any commercial insurance and/or managed care plan, and any other entity or person for such services. Physician agrees to take all reasonable actions requested by Employer to assist in the collection of accounts receivable for such services. Physician agrees that Physician's sole compensation for the provision of such services shall be the compensation paid by Employer to Physician as described herein. Physician agrees to promptly remit to Employer any other payments received by Physician in consideration for such services. Physician may however retain payments arising out of the performance of Permitted Outside Medical Services in accordance with Section 3.G above.

B.  **Setting of Fees.** Employer shall have exclusive authority to determine the fees, or a procedure for establishing the fees, to be charged patients, even though such patients may be treated by Physician in the course of Physician's employment by Employer. In all cases, such charges shall be comparable with the usual and customary charges for similar services in the local community. Employer shall determine whether and upon what terms Physician and Employer shall participate in any program or contract, whether government-sponsored or privately-sponsored.

C.  **Power of Attorney.** Physician does hereby appoint Employer as Physician's attorney-in-fact to execute, deliver or endorse checks, applications for payment, insurance claim forms or other instruments required or convenient, as determined by Employer in its sole discretion, to fully collect, secure or realize all sums lawfully due to Employer, for services rendered by Physician under this Agreement during the Agreement Term. The power of attorney is coupled with an interest, is irrevocable and shall survive expiration or termination of this Agreement.

D.  **Billing and Collection.** Physician agrees that, during the Agreement Term, Physician shall not bill to or collect from any patient or third party payor any amount for services rendered hereunder. Physician hereby irrevocably assigns and grants to Employer the right to bill and collect from patients or third party payors for all services rendered by Physician hereunder, regardless of the location where any such services may be rendered by Physician. Physician agrees to execute any and all documents deemed necessary or desirable by Employer to carry out the provision of this Section. Unless otherwise agreed by Physician, all billing and collection activities shall be conducted as part of the regular business operations of the Practice. Such procedures shall include, but not be limited to, sending bills, filing insurance claims, and making phone calls. Physician shall complete billing and charge information on all patients, even if Physician desires to waive or discount charges. If Physician wishes to waive or discount any charges on any patient for Physician's services, Physician shall not do so without the consent of Employer unless such waiver or discount is within Employer's established policy guidelines.

E.  **Accounting Reports and Review.** Employer shall have available for Physician lists of fees charged for particular services for particular payors and shall update these lists on a regular basis as fees and payors change. Employer also shall provide to

Physician, on a monthly basis, production reports which list the billings attributable to services provided by Physician and in the Practice, the collections in connection with the services provided by Physician and the Practice, and accounts receivable in connection with provision of said services, such reports to be provided within thirty (30) days after the applicable month to which such reports relate.

## 11. LIMITATIONS OF AUTHORITY

A.  Physician agrees not to enter into any transactions on Employer's behalf without the express written consent of Employer, including, but not limited to, the following actions:

   i.   Pledge the credit of Employer or any of its other employees;

   ii.  Bind Employer under any contract, agreement, note, mortgage or other agreement;

   iii. Bind, release, or discharge any debt due Employer; or

   iv.  Sell, mortgage, transfer or otherwise dispose of any assets of Employer.

B.  Physician shall hold Employer harmless from any loss attributable to a violation of this covenant. Notwithstanding anything to the contrary in this Section, Physician shall advise and assist Employer in securing and retaining contracts in the name and for the account of Employer with such individuals or entities necessary for the proper and efficient functioning of Employer.

## 12. NOTICE

A.  All notices required or permitted to be given under the terms of this Agreement shall be in writing, and shall be effective upon delivery if delivered to the addressee in person, effective three (3) business days after mailing if mailed by certified mail, postage prepared, return receipt requested, or effective the next business day if delivered by overnight courier with charges prepaid, as follows:

If to Employer:

Citrus Specialty Group, Inc.
Attn: Chief Executive Officer
502 W Highland Blvd.
Inverness, Florida 34452

With Copy to:

One Park Plaza
P O Box 550
Nashville, TN 37202-0550
Attn: General Counsel

If to Physician:

Honey Milestone, MD
1932 Funston St
Hollywood, FL  33020

or to such other address as either party shall have designated for notices to be given to him or it in accordance with this Section.

## 13. MISCELLANEOUS

A.  <u>Recitals</u>. The recitals are true and correct and are incorporated herein in their entirety.

B.  <u>Severability</u>. If any provision of this Agreement shall be held invalid, illegal, or unenforceable for any reason or in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and the remainder of this Agreement shall nevertheless remain in full force and effect. If any provision of this Agreement shall be held invalid or unenforceable under any particular circumstances, it shall nevertheless remain in full force and effect in all other circumstances.

C. **Assignment**. Employer may assign all of its rights and duties under this Agreement without recourse to any Affiliate or to any entity that purchases all or substantially all of the operating assets of Employer, provided that any such assignment shall not abrogate any compensation of Physician. Physician may not assign his/her rights or duties herein without the prior written consent of Employer. Any such assignment by Physician without the prior written consent of Employer shall be null and void. This Agreement may otherwise be assigned upon the written agreement of both parties.

D. **Offset**. Employer hereby is authorized to offset any sums owed by Physician to Employer hereunder, or owed by Physician to any Affiliate of Employer under any arrangement, against Physician Compensation or against any other sums payable to Physician by Employer or by any Affiliate of Employer.

E. **Governing Law and Venue**. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the state in which the Practice is located. Any action or claim arising from, under or pursuant to this Agreement shall be brought in the courts, state or federal, within the state in which the Practice is located, and the parties expressly waive the right to bring any legal action or claims in any other courts. The parties hereto hereby consent to venue in any state or federal court within the state in which the Practice is located having jurisdiction over the County for all purposes in connection with any action or proceeding commenced between the parties hereto in connection with or arising from this Agreement.

F. **Arbitration**. Except as to the provisions contained in Sections 8 and 9, the exclusive jurisdiction of which shall rest with a court of competent jurisdiction in the state in which the Practice is located, any controversy or claim arising out of or related to this Agreement, or any breach thereof, shall be settled by arbitration in the County, in accordance with the rules and procedures of alternative dispute resolution and arbitration established by the Alternative Dispute Resolution Service of the American Health Lawyers Association ("AHLA"), and judgment upon any award rendered may be entered in any court having jurisdiction thereof. Such arbitration shall be conducted before a single AHLA arbitrator selected jointly by the parties, or in the event the parties are unable to agree, designated by the AHLA. To the extent permitted by law, the Parties hereby jointly and severally waive any and all right to trial by jury in any action or proceeding arising out of or relating to this Agreement, or the obligations hereunder. The Parties each represent to the other that this Waiver is knowingly, willingly and voluntarily given. This provision does not preclude Employer from filing any cross-claim or third-party claim against Physician in a court of law as a result of litigation initiated against Employer by a third party.

G. **Waiver**. Any waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any other provision hereof and shall not be effective at all unless in writing. A waiver of any of the terms and conditions hereof shall not be construed as a general waiver by either party, and such waiving party shall be free to reinstate any such term or condition, with or without notice to the other party.

H. **Entire Agreement/Amendment**. This Agreement contains the entire agreement between the parties hereto and supersedes all prior agreements, whether oral or in writing, with respect to the subject matter hereof. No change, addition, or amendment shall be made except by written agreement executed by all of the parties hereto. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, subject to the restriction on assignment set forth above.

I. **Survival**. The provisions of this Agreement, including but not limited to Sections 8 and 9, shall survive the termination of Physician's relationship with Employer and the assignment of this Agreement by Employer to any successor or assign.

J. **Confidentiality**. Except as otherwise required by law, Physician hereby agrees to hold in the strictest confidence all of the terms and conditions set forth herein; *provided, however*, that Physician may disclose the terms hereof to his/her attorneys, accountants and other financial and legal advisors as reasonably necessary. Failure to do so, at the discretion of Employer, may constitute cause for immediate termination of this Agreement.

K. **Expenses**. Each party to this Agreement shall pay its own costs and expenses in connection with the transaction contemplated hereby.

L. **Counterparts**. This Agreement may be executed by the parties in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Any signatures on behalf of Facility required by this Agreement or written approval required hereunder may be electronic signatures in accordance with law.

M. **Electronic Documents**. The parties agree that the original of this document, including the signature page, may be scanned and stored in a computer database or similar device, and that any printout or other output readable by sight, the reproduction of which is shown to accurately reproduce the original of this document, may be used for any purpose just as if it were the original, including proof of the content of the original writing.

N. **Binding Effect**. This Agreement shall not become effective or legally binding upon either party until signed by both Employer and Physician.

O.  **Intellectual Property.** All patents, formulae, ideas, inventions, processes, copyrights, know-how, proprietary information, trademarks, trade names, or other developments for future improvements to patients that are conceived or worked on by Physician while he or she is an employee under this Agreement are the property of Employer, and all royalties, fees or other income attributable thereto shall be the sole property of Employer, and Physician shall have no right thereto.  Notwithstanding the foregoing, any intellectual property developed through Physician's sole effort, not during the hours Physician is providing services to the Employer hereunder, and not materially using the Employer's resources, shall constitute a Permitted Outside Medical Service within the meaning of Section 3.G, are Physician's property, all royalties, fees or other income attributable thereto shall be Physician's sole property, and neither Employer nor its Affiliates shall have any right thereto.

P.  **Duty to Defend and Indemnify.** To the extent not covered by liability insurance carried by the parties, each party shall be solely responsible for its own claims, liabilities, damages, injuries, suits, demands, and expenses of all kinds (including, without limitation, attorneys' fees and court costs), that may result or arise from tortious, criminal, or discriminatory conduct by such party, or by any member, partner, employee, representative, agent, or contractor of such party, and such party shall defend, indemnify, and hold harmless the other party and any members, partners, employees, agents, representatives, and contractors of the other party from and against such losses or damages. In the event that a claim is made against both parties, it is the intent of both parties to cooperate in the defense of such claim and to cause their insurers to do likewise. Physician agrees to cooperate in all litigation matters affecting Employer to the extent Physician does not have a conflict of interest.

Q.  **Use of Physician's Name.** In consideration of the salary, bonuses, and benefits as set forth in Section 4 hereof, Physician hereby grants Employer the exclusive right to use his or her name and likeness in any lawful advertising and marketing conducted by Employer without any additional compensation or remuneration to Physician.

R.  **Medicare Access.** Upon written request of the Secretary of Health and Human Services or the Comptroller General or any of their duly authorized representatives, Physician shall make available to the Secretary or Comptroller General those contracts, books, documents, and records necessary to verify the nature and extent of the cost of providing his/her services. If Physician carried out any of the duties of this Agreement with a value of $10,000.00 or more over a twelve (12) month period through a subcontract with a related individual or organization, Physician shall include this requirement in all such subcontracts. The parties agree that any attorney-client, accountant-client, or any other legal privilege shall not be deemed waived by virtue of this section.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the day and year written below.

**PHYSICIAN:**

Honey Milestone, MD

_____                        Date: 7/15/17
(Signature)

**EMPLOYER:**

Citrus Specialty Group, Inc.  d/b/a Genesis Women's Center

By: /S/Kenneth Griffin                                     Date:  June 1, 2017
     Vice President

(WRVU Version)

EXHIBIT A.4

**PHYSICIAN COMPENSATION**

A.   The following definitions shall apply in the calculation of Physician Compensation:

*WRVUs* - is defined as the number of units attributed to each professional service performed by Physician, as such WRVUs are listed in the Federal Register as published on November 2, 1998, by the Department of Health and Human Services and the Centers for Medicare and Medicaid Services, and updated via the most recent rulemaking from such authorities.

Employer shall have the right to review and make an appropriate reduction in WRVU credits in situations which include but are not limited to: (i) WRVU for respective CPT code falls outside the contractually approved CPT code series or range; (ii) no charge is associated with the WRVU in the applicable regulations; (iii) Physician generates WRVU(s) but fails to execute properly a required Medicare Advance Beneficiary Notice for the WRVU(s) involved; (iv) Physician generates an evaluation and management ("E/M") visit and WRVU value but the claim is denied due to that particular E/M service's exceeding the maximum number of E/M visits allowed per day; (v) Physician generates a WRVU for a service that is denied due to a lack of proper documentation by Physician; (vi) Physician generates a WRVU for a service that is denied because the service is not deemed medically necessary; (vii) Physician generates a WRVU for a service that is deemed to be a duplicate billed service by the payor and, therefore, not eligible for reimbursement; (viii) Physician generates a WRVU for a service that is subsequently denied due to that service's inclusion in a global billing period; and (ix) Physician generates a charge and WRVU(s) for a service that represents a multiple procedure and, consequently, results in a percentage reduction of the maximum allowable charge; in this situation, the WRVU credit will be reduced by the same percentage reduction. If Physician is inadvertently given WRVU credit and compensation for such when s/he should not be, such compensation is subject to being recouped by Employer.

*Dollar Conversion Factor* – is defined as the numeric factor by which Physician's WRVUs are multiplied to calculate Physician Compensation.  Physician's Dollar Conversion Factor shall be $40.00.

B.   *Physician Compensation.* Physician Compensation shall equal the product of Physician's WRVUs for the respective calculation period and Physician's Dollar Conversion Factor for the same period.  Physician Compensation shall be payable as follows:

i.   *Bi-Weekly Draw.* Beginning with the first payroll as established by Employer after the Effective Date, Employer shall pay to Physician the sum of $10,769.00 bi-weekly as a draw in respect of Physician Compensation for such bi-weekly period ("Bi-Weekly Draw"); the amount of such draw for Physician's first pay period and Physician's last pay period will be determined based on the number of days worked in each of such pay periods. Employer will pay Physician the Bi-Weekly Draw in accordance with its general payroll practices and shall have the option to modify the Bi-Weekly Draw to reflect Physician Compensation more accurately.

ii.   *Reconciliation of Draw.* The excess or deficit of actual Physician Compensation as compared to Physician's Bi-Weekly Draw shall be reviewed and reconciled on both a quarterly basis and upon expiration or earlier termination of this Agreement ("Reconciliation"). Such Reconciliation shall occur no later than by the end of the next full calendar month immediately following the end of such quarter or termination or expiration of this Agreement (each, a "Reconciliation Period"). The Reconciliation shall be performed on a calendar year (and not contract-year) basis, and the results of such Reconciliation shall be provided to Physician.

a.   *Quarterly Reconciliations (Not Applicable to Expiration or Termination of This Agreement).* At the end of each calendar quarter during the Agreement Term, Employer shall perform the required Reconciliation for the period ending as of such date. If there is a cumulative, net excess in Physician Compensation as compared to the cumulative Bi-Weekly Draw for such quarter, Physician shall be paid the excess, net of applicable employment taxes and withholdings, by the 15th business day after the Reconciliation Period. If there is a cumulative deficit (the cumulative Bi-Weekly Draw for the period exceeds Physician Compensation generated by the actual professional production of Physician), such deficit shall be "rolled forward" to the next calendar quarter of this Agreement.

b.   *Semiannual True-up and Reconciliation Upon Expiration or Earlier Termination.* At the end of each June and December (each, a "True-up Date") during the Agreement Term (and upon expiration or earlier termination of the Agreement Term), Employer shall perform the required Reconciliation for the **six-month period** ending as of such True-up Date (or the period between the last Reconciliation and expiration or earlier termination of the Agreement

Term). If there is a cumulative, net excess in Physician Compensation as compared to the cumulative Bi-Weekly Draw for such period, Physician shall be paid the excess, net of applicable employment taxes and withholdings, by the 15th business day after the Reconciliation Period. Conversely, if there is a cumulative deficit (the cumulative Bi-Weekly Draw for the period exceeds Physician Compensation generated by the actual professional production of Physician), or in the event such deficit exists upon expiration or earlier termination of the Agreement Term, Physician shall repay the amount of such deficit, in full, by 15th business day after the Reconciliation Period; *provided, however,* that if the Effective Date occurs during the two calendar months preceding either True-up Date, Employer, in its sole and absolute discretion, may allow such deficit to be "rolled forward" to the next calendar quarter of this Agreement.

   iii. Notwithstanding the generality of the foregoing, at no time during the Agreement Term shall Physician Compensation plus any and all other remuneration exceed fair market value ("FMV"). Accordingly, Employer may conduct an FMV analysis of Physician Compensation during the term hereof and will reduce Physician Compensation after completion of such analysis if necessary to reflect a reduction in FMV.

C. *Benefits.* In addition to Physician Compensation, Physician shall be entitled to receive the following benefits:

   i. ***PTO and CME Leave.*** During the Base Guarantee Period, Physician shall be entitled to 25 days per year (to be pro-rated for partial years) for personal time off and/or medical convention/continuing education ("Leave"). If the Base Guarantee Period ends prior to the end of a calendar year, Leave will be pro rated based on the number of months of the Base Guarantee Period during the calendar year divided by twelve (12). During or after the Base Guarantee Period, if Physician desires, Physician may take unpaid time off for personal business, educational meetings, and/or professional society meetings, provided that the Employer is adequately covered. Leave is to be used for time away from the office (notwithstanding any on-call duties Physician may have during such time) for personal time, sick time, vacation time, holidays, medical conventions or continuing medical education. Unused days of Leave cannot be carried over to the following calendar year. Leave may not be cashed out at any time, including at termination of employment. Physician agrees that all requests for Leave shall be scheduled to accommodate the needs of Employer and shall require Employer's pre-approval. Except for an emergency, arrangement for all absences must be made and approved by Employer at least 15 days in advance.

   ii. ***Dues, Subscriptions and CME Allowance.*** Employer shall pay or reimburse Physician for up to $5,500.00 per calendar year for the following: (a) membership dues and, medical subscriptions, board certification fees, educational materials, and (b) Physician's reasonable expenses incurred in connection with Leave related to medical conventions or continuing education, including registration fees, travel expenses, lodging and meals (please refer to Employer's travel policy for guidance on reasonable expenses). Employer shall pay or reimburse Physician for up to $1,000.00 per calendar year for credentialing fees. All such expenses must be pre-approved by Employer, in accordance with HCAPS and Employer's policies and documented in accordance with IRS guidelines.

   iii. ***Pre-Employment Expenses.*** In accordance with its policies, Employer shall pay or reimburse Physician for those pre-employment expenses associated with Physician's employment hereunder, including, without limitation, medical staff dues at Affiliated hospitals, licensures, Drug Enforcement Agency fees, Bureau of Narcotics and Dangerous Drugs (or other similar state agency) fees, and board certification fees not to exceed $2,500.00. In the event Physician does not commence employment under this Agreement for any reason, Physician immediately shall repay, upon demand, any such pre-employment expenses that are paid or reimbursed by Employer prior to the Effective Date of this Agreement.

   iv. ***Business-Related Meetings, Training, Expenses, Medical License, Medical Staff Application and Provider Enrollment.*** During the Agreement Term, Employer may pay or reimburse Physician for reasonable costs and expenses incurred by Physician for his or her participation in business-related training, education or other meetings or business related expenses on behalf of Employer or Employer's affiliates, including, without limitation, registration fees, travel expenses, lodging, meals, medical staff memberships at hospitals Affiliated with Employer and approved outreach facilities, licensure, Bureau of Narcotics and Dangerous Drugs (or other similar state agency) fees, Drug Enforcement Agency registration fees and provider enrollment (please refer to Employer's travel policy for guidance on reasonable expenses) as pre-approved by Employer.

   v. ***Cellular Telephone and Pager Expenses.*** During the Agreement Term, Employer shall pay or reimburse Physician for Physician's business-related cellular telephone, pager, and/or pager service expenses.

**(Base Guarantee WRVU Version)**

**EXHIBIT B-WRVU**

**Base Guarantee.** Provided that the terms and conditions set forth in this Agreement are met, Physician shall, during the period beginning with the Effective Date through the first anniversary thereof, receive a minimum guaranteed base compensation of $10,769.00 bi-weekly ("Base Guarantee Period"). At all times during the Base Guarantee Period, Employer shall reconcile such bi-weekly payments in accordance with Section B.ii of Exhibit A.4 to the Agreement. In the event such reconciliation reveals a deficit between Physician Compensation as determined on a WRVU basis, Physician shall retain the guarantee amount. In the event Physician Compensation as determined on a WRVU basis exceeds the guarantee amount, Physician shall be paid the greater amount at the end of each Reconciliation Period (subject to applicable payroll withholdings). During the Base Guarantee Period, Physician's cumulative year-to-date deficit, if any, will be forgiven at the end of each contract year and at the end of the Base Guarantee Period as long as Physician has not been paid in excess of the guarantee amount. After expiration of the Base Guarantee Period, Physician shall be paid in accordance with Exhibit A.4 to this Agreement. Notwithstanding the generality of the foregoing, at no time during the Agreement Term shall Physician Compensation and any other remuneration exceed fair market value ("FMV"). Accordingly, Employer may conduct an FMV analysis of Physician Compensation during the term hereof and will reduce Physician Compensation after completion of such analysis if necessary to reflect a reduction in FMV.

**PHYSICIAN EMPLOYMENT AGREEMENT**
**PRIOR ACTS COVERAGE ADDENDUM**
**HCAPS-459PRI   4/2017**
**Contract CSG-121928, Supplement 0**

This **PRIOR ACTS COVERAGE ADDENDUM** is attached to, made a part of, and executed simultaneously with that particular Physician Employment Agreement ("Agreement").

As a condition to Employer's employment of Physician pursuant to the terms of the Agreement, Employer shall provide Physician with prior acts coverage through Health Care Indemnity, Inc., a Colorado corporation and affiliate of Employer ("HCI"), providing insurance coverage for Physician for services rendered to his/her patients prior to the Effective Date of the Agreement. Physician shall cooperate with HCI to obtain such prior acts coverage and, to the extent necessary, in HCI's defense of any claims made under such policy, whether during or after the Agreement Term.

**IN WITNESS WHEREOF**, the parties hereto have executed this Addendum as of the day and year written below.

**PHYSICIAN:**

Honey Milestone, MD

_____          _____
(Signature)                                              Date

**EMPLOYER:**

Citrus Specialty Group, Inc.  d/b/a Genesis Women's Center

By: /S/Kenneth Griffin                              June 1, 2017
     Vice President                                   Date

**PHYSICIAN EMPLOYMENT AGREEMENT**
**CALL COVERAGE COMPENSATION ADDENDUM - CITRUS MEMORIAL HOSPITAL**
**HCAPS-400B Rev 1/2017**
**Contract CSG-121928, Supplement 0**

**THIS FACILITY CALL COVERAGE COMPENSATION ADDENDUM** is attached to, made a part of, and executed simultaneously with that particular Physician Employment Agreement (the "Agreement").

A.  You will provide call coverage services at Citrus Memorial Hospital  ("Hospital") through a separate Professional Services Agreement between Practice and Hospital.

B.  Physician agrees to provide ten (10) twenty-four (24) hour call coverage shifts per month as part of standard compensation. Call coverage services provided in excess of ten (10) shifts per month, pursuant to this Addendum, shall be separately compensated, as set forth in Section C below.

C.  Under the terms and conditions of the above-referenced Professional Services Agreement, Hospital shall make payments to the Employer for Physician's coverage services at Hospital. Employer shall in turn pay Physician, as employee compensation under the Agreement, the equivalent of $525.00 per twenty-four (24) hour shift, beginning with the eleventh (11th) twenty-four (24) hour shift per month, not to exceed seven (7) paid shifts per month, up to a maximum of  $3,675.00 per month, which amounts to an annual maximum of $44,100.00, less any applicable W-2 withholdings.

**IN WITNESS WHEREOF**, the parties hereto have executed this Addendum as of the day and year written below.

**PHYSICIAN:**

Honey Milestone, MD

_____          Date  7/15/17
(Signature)

**PRACTICE:**

Citrus Specialty Group, Inc.  d/b/a Genesis Women's Center

By: /S/Kenneth Griffin                                     June 1, 2017
    Vice President of Practice                            Date

**PHYSICIAN EMPLOYMENT AGREEMENT**
**ADDITIONAL COMPENSATION - RELOCATION ADDENDUM**
**HCAPS-400REL  Rev. 11/2015**
**Contract CSG-121928, Supplement 0**

This Addendum is attached to, made a part of, and executed simultaneously with that particular Physician Employment Agreement (the "Agreement").

A.  Subject to Practice's policies and procedures concerning moving and relocation reimbursement, Practice shall reimburse you up to a maximum of $15,000.00 ("Relocation Amount") for reasonable expenses you incur in moving your personal effects, household furnishings, and residence from Hollywood, Florida to Inverness, Florida or surrounding areas. You will be required to submit to Practice valid invoices documenting the expenses incurred within one hundred eighty (180) days of your actual relocation.

B.  The Relocation Amount shall be amortized over the Agreement Term. If the Agreement is terminated for any reason prior to the expiration of the term stated in the Agreement, you agree to immediately, upon demand, pay to Practice the Unamortized Amount (as defined below) plus interest at twelve percent (12%) per annum that begins to accrue thirty (30) days after the termination date. The "Unamortized Amount" shall equal the total Relocation Amount paid by a fraction. The numerator of that fraction shall equal the sum of the whole and partial calendar months measured from the date the Agreement is terminated through the end of the term specified in the Agreement. The denominator of that fraction shall equal twelve (12) multiplied by the number of years in the Term of the Agreement.

C.  Notwithstanding the foregoing paragraph, if the Agreement is terminated "without cause" by the Practice or "for cause" by you prior to the expiration of the term of the Agreement, you shall have no obligation to repay the Practice the Unamortized Amount.

**IN WITNESS WHEREOF**, the parties hereto have executed this Addendum as of the day and year written below.

**PHYSICIAN:**

Honey Milestone, MD

_____          _____
(Signature)                                                                Date

**PRACTICE:**

Citrus Specialty Group, Inc.  d/b/a Genesis Women's Center

By: /S/Kenneth Griffin                                June 1, 2017
    Vice President                                      Date

**PHYSICIAN EMPLOYMENT AGREEMENT**
**ADDITIONAL COMPENSATION - COMMENCEMENT BONUS ADDENDUM**
HCAPS-400SIG Rev. 6/2015 v8
Contract CSG-121928, Supplement 0

This Addendum is attached to, made a part of, and executed simultaneously with that particular Physician Employment Agreement (the "Agreement").

A.  Practice will pay you a Commencement Bonus of $25,000.00 ("Commencement Bonus"). Such Commencement Bonus, less any applicable W-2 withholdings shall be payable after the Effective Date of the Agreement, and Practice's receipt of all necessary employment and credentialing paperwork.

B.  The gross amount of the Commencement Bonus shall be amortized over the Agreement Term. If the Agreement is terminated for any reason (other than "without cause" by the Practice or "for cause" by you) prior to the expiration of the term stated in the Agreement, you agree to immediately, upon demand, pay to Practice the unamortized gross amount of the Commencement Bonus paid to you. The unamortized amount shall be calculated by multiplying the total gross Commencement Bonus paid by a fraction. The numerator of that fraction shall equal the sum of the whole and partial calendar months measured from the date the Agreement is terminated through the end of the term specified in the Agreement. The denominator of that fraction shall be equal to twelve (12) multiplied by the number of years in the Term of the Agreement.

C.  If the Agreement is terminated "without cause" by the Practice or "for cause" by you prior to the expiration of the term of the Agreement, you are not required to repay any amount of the Commencement Bonus as long as the payment of the addition of your Commencement Bonus to your total compensation for the actual employment period does not result in compensation to you in excess of fair market value. If your total compensation does exceed fair market value as a result of the Commencement Bonus, you agree to promptly pay to Practice the difference between the total compensation you received and fair market value compensation for the actual employment period plus interest at twelve percent (12%) per annum that begins to accrue thirty (30) days after the termination date.

IN WITNESS WHEREOF, the parties hereto have executed this Addendum as of the day and year written below.

**PHYSICIAN:**

Honey Milestone, MD

_____     7/15/17
(Signature)                                                                        /Date

**PRACTICE:**

Citrus Specialty Group, Inc.  d/b/a Genesis Women's Center

By: /S/Kenneth Griffin                                    June 1, 2017
    Vice President                                          Date

# **<u>EXHIBIT 2</u>**

# **<u>EXHIBIT 2</u>**

August 1, 2018

Citrus Specialty Group, Inc.,
502 West Highland Blvd.
Inverness, Florida 34452

      Attn: Human Resources

Dear Hospital Administrator,

This letter is to notify you that regretfully, I am resigning from my position within Citrus Specialty Group, Inc.. My last date of employment will be October 30, 2018 (ninety (90) days from today).

Resigning from this job is not an easy decision for my family and I. If an agreement can be made regarding the changes that I proposed in my email to Ms. Natalie Hunter dated July 13, 2018, I am open to discussions.

The growth and learning opportunities during my employment here are invaluable and I am truly grateful. I would like to thank all the staff members of Citrus Memorial Hospital and Citrus Specialty Group, Inc. for all the help and support they have rendered since day one. I really enjoyed working here and have had rewarding experiences that I will carry with me forever.

I am willing to help in any way to make the transition as smooth as possible. This includes assisting in recruiting and training my replacement. Please let me know if there is anything specific that you would like me to do.

Respectfully,

Honey Milestone, MD